**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| Kenneth C. Behrendt, | ) | Civil Action No. |
| | ) | ECF Case |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **COMPLAINT** |
| Atos IT Solutions and Services, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Kenneth C. Behrendt, individually and in his capacity as the Sellers'

Representative pursuant to the below-described agreements ("Behrendt" or "Plaintiff"),

by and through undersigned counsel, as and for his Complaint against Defendant Atos IT

Solutions and Services, Inc. ("Atos" or "Defendant") states and alleges as follows:

PARTIES

1.      Behrendt is an individual residing in Minnesota and is a citizen of Minnesota

for purposes of diversity jurisdiction.

2.      Atos is a corporation formed under the laws of the State of Delaware and

maintains its principal place of business in Texas.  As such, Atos is a citizen of Delaware

and Texas for purposes of diversity jurisdiction.

JURISDICTION AND VENUE

3.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

§1332(a)(1).

4.      This case satisfies both the diversity of citizenship and the amount in

controversy requirements of 28 U.S.C. § 1332(a)(1) since Plaintiff on the one hand, and

Defendant on the other hand, are citizens of different states, and the amounts in controversy as set forth in the agreements at issue exceed $75,000 exclusive of costs and interest.

5.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(3) because, among other things, the Defendant is subject to the court's personal jurisdiction with respect to this action and the parties have consented to the laying of venue of any action arising out of the below-described Purchase Agreement in United States District Court for the Southern District of New York located in New York, New York.

<u>BACKGROUND AND FACTS</u>

6.      Plaintiff and Defendant are parties to that certain "Shares Purchase Agreement dated as of October 21 , 2020" (the "Purchase Agreement").

7.      The Purchase Agreement requires that Defendant pay a "Deferred Purchase Price" to "Sellers".

8.      Behrendt is one of the "Sellers" as that term is defined and used in the Purchase Agreement.

9.      Behrendt is the "Sellers' Representative" as that term is defined and used in the Purchase Agreement.

10.     Specifically, Section 2.4 of the Purchase Agreement states in pertinent part:

Deferred Purchase Price.

(a) The Deferred Purchase Price shall be paid to Sellers in three (3) equal installments …with respect to each of calendar years 2021, 2022, and 2023 (each of such years, the "Measurement Periods" and such payments, the "2021 Installment Amount," "2022 Installment Amount," and "2023 Installment Amount," respectively) except as follows:

* * *

(ii)    The 2022 Installment Amount shall not be paid by Buyer to any Sellers if, as of December 31, 2022 two (2) out of the ten (10) Key Employees (including their Leaver Replacement if any) employed by the Company or Atos Group as of January 1, 2022 has (A) resigned, or (B) been terminated by the Company or Atos Group with Cause unless, in each of the cases of (A) or (B), such Key Employee(s) has/have been replaced by a Leaver Replacement before 30rd (sic) June 2023.

* * *

(b) No later than July 15th of…2023…, the Buyer shall deliver to the Sellers' Representative a statement (…"2022 Deferred Payment Statement"…), setting forth in good faith, for each relevant Installment Amount payment, whether the conditions set forth in Section 2.4(a)(i), 2.4(a)(ii), or 2.4(a)(iii), as applicable have been met and therefore if the…2022 Installment Amount…is or is not payable, together with reasonable supporting detail with respect to such determination.

(c) After receipt of each Deferred Payment Statement from Buyer, the Sellers' Representative shall have thirty (30) days to review such Deferred Price Statements and either accept or object. …

(d) Subject to Section 8.7, …[the] 2022 Installment Amount…shall be paid by Buyer within five (5) Business Days after the final determination in accordance with Section 2.4(c) above. …

(e) Subsequent to the Closing Date and through December 31, 2023, the following shall apply:

(i)    For the purpose of this Section 2.4, a key Employee shall be deemed replaced if the Sellers' Representative has identified someone of similar or better capability experience (on paper) as the Key Employee who is leaving or has left the employment of the Atos Group (a "Leaver Replacement"), such Leaver Replacement shall count in the calculation of the Key Employees as of each of the 2021, 2022, and 2023 Measurement Periods, if acknowledged as qualified by Bryan Ireton or his successor (which acknowledgment must be made in good faith and not unreasonably withheld, delayed or conditioned). Such Leaver Replacement shall be taken into account for purposes of determining whether any installments of the Deferred Purchase Price are payable only if the Leaver Replacement has joined the Company or the Atos Group on or before the 31st March of

respectively 2022, 2023 or 2024 and if she/he has agreed to the average gross salary applicable on this market applicable as of the Measurement Periods (which average salary shall be made on the basis of competitive market benchmark of the market practices as of such Measurement Periods).

11.     The Purchase Agreement permits Behrendt as the Seller's Representative to identify a "Leaver Replacement" for each "Key Employee" who left the employment of the Atos Group during the calendar year 2022.

12.     Pursuant to the Purchase Agreement, a Leaver Replacement is "someone of similar or better capability experience (on paper) as the Key Employee who…has left the employment of the Atos Group."

13.     Michael Twedell ("Twedell") was a person identified as a Key Employee in the Purchase Agreement.

14.     Twedell left his employment with the Atos Group, and in particular, Defendant, in 2022.

15.     A replacement for Twedell – Tim Wilkinson ("Wilkinson") – joined and commenced work for Defendant prior to December 31, 2022 and was employed on December 31, 2022.

16.     On January 3, 2023, Plaintiff formally identified and presented Wilkinson to Defendant as the "Leaver Replacement" for former Key Employee Twedell.

17.     On January 3, 2023, Plaintiff formally provided notice to Defendant under the Purchase Agreement that Wilkinson had similar or better capability and experience than Twedell.

18.     On January 3, 2023, Plaintiff provided Defendant with Wilkinson's professional resume and other information that demonstrated that Wilkinson had similar or better capability and experience than Twedell.

19.     At the commencement of his employment with Defendant, Wilkinson agreed to the average gross salary applicable on this market applicable as of the applicable Measurement Period, or some lesser amount.

20.     Through his work for Defendant, Wilkinson has demonstrated that he, in fact, has similar or better capability and experience than Twedell.

21.     Wilkinson qualifies as a Leaver Replacement for Twedell under the Purchase Agreement.

22.     The Purchase Agreement states that a "Leaver Replacement shall count in the calculation of the Key Employees as of each of the 2021, 2022, and 2023 Measurement Periods, if acknowledged as qualified by Bryan Ireton or his successor (which acknowledgment must be made in good faith and not unreasonably withheld, delayed or conditioned)."

23.     Frank Castora ("Castora") is the Chief Executive Officer for Defendant.

24.     Castora is the "successor" to Bryan Ireton as that term is used in the phrase "Bryan Ireton or his successor" in the Purchase Agreement.

25.     As the successor to Bryan Ireton under the Purchase Agreement, Castora has the duty to evaluate the qualifications and experience of a proposed Leaver Replacement.

26.     If a proposed Leaver Replacement is qualified under the Purchase Agreement, Castora has the duty to acknowledge that the Leaver Replacement is qualified.

27.     Under the Purchase Agreement, Castora must make such acknowledgment in good faith.

28.     Under the Purchase Agreement, Castora may not unreasonably withhold, delay or condition his required acknowledgement.

29.     Under the Purchase Agreement, Castora is the person who must determine whether a Leaver Replacement shall count in the calculation of the Key Employees as of each of the 2022 Measurement Period.

30.     Under the Purchase Agreement, Castora is the person who must determine whether a Leaver Replacement has joined the Company or the Atos Group as of December 31, 2022 and on or before the 31st March of 2023.

31.     Under the Purchase Agreement, Castora is the person who must determine whether a Leaver Replacement has agreed to the average gross salary applicable on this market applicable as of the Measurement Periods (which average salary shall be made on the basis of competitive market benchmark of the market practices as of such Measurement Periods).

32.     On January 3, 2023, Behrendt requested that Defendant confirm its agreement that Wilkinson qualified as a "Leaver Replacement" for Twedell.

33.     Defendant failed or refused to respond to this request.

34.     On January 19, 2023, through counsel, Plaintiff sent correspondence to Defendant and its current Chief Executive Officer, Castora, regarding Defendant's failure to timely respond to Plaintiff's request that it affirm that Wilkinson qualified as a "Leaver Replacement" for former Key Employee Twedell.

35.     On or before January 20, 2023, Castora determined that Wilkinson qualified as a "Leaver Replacement" for former Key Employee Twedell.

36.     On or before January 20, 2023, Castora determined that Wilkinson would count in the calculation of the Key Employees for the 2022 Measurement Period.

37.     On or before January 20, 2023, Castora determined that Wilkinson had joined the Company or the Atos Group and was employed on December 31, 2022.

38.     On or before January 20, 2023, Castora determined that Wilkinson had joined the Company or the Atos Group on or before March 31, 2023.

39.     On or before January 20, 2023, Castora determined that Wilkinson had agreed to the average gross salary applicable on this market applicable as of the Measurement Periods (which average salary shall be made on the basis of competitive market benchmark of the market practices as of such Measurement Periods).

40.     On January 20, 2023, Castora met with Plaintiff and discussed Wilkinson's status as a Leaver Replacement.

41.     On January 20, 2023, Castora delivered the required 2022 Deferred Payment Statement to Plaintiff.

42.     Specifically, but without limitation, Castora orally informed Plaintiff that Wilkinson qualified as a "Leaver Replacement" for former Key Employee Twedell, that Wilkinson would count in the calculation of the Key Employees for the 2022 Measurement Period, and that Sellers had met each of the conditions required to secure the second Deferred Purchase Price installment under the Agreement, Section 2.4(a)(ii).

43.    Castora's oral statements to Plaintiff constituted the 2022 Deferred Payment Statement under the Purchase Agreement.

44.    Nothing in the Purchase Agreement requires that the 2022 Deferred Payment Statement be delivered in writing.

45.    Under the Purchase Agreement, the Sellers Representative has thirty (30) days after the receipt of a Deferred Payment Statement from Buyer to review such Deferred Price Statement and either accept or object to it.

46.    Plaintiff received the 2022 Deferred Payment Statement from Defendant on January 20, 2023.

47.    Under the Purchase Agreement, Plaintiff had until February 19, 2023—i.e., thirty (30) days after the receipt of the 2022 Deferred Payment Statement from Defendant—to review Defendant's Deferred Price Statement and either accept or object to it.

48.    Plaintiff, through counsel, sent written correspondence to Defendant on February 7, 2023 accepting Castora's and Defendant's determination that Wilkinson qualified as a "Leaver Replacement" for Twedell and that Sellers had met each of the conditions required to secure the second Deferred Purchase Price installment under the Purchase Agreement, Section 2.4(a)(ii)).

49.    Plaintiff's acceptance of Castora's and Defendant's determination that Wilkinson qualified as a "Leaver Replacement" for Twedell and that Sellers had met each of the conditions required to secure the second Deferred Purchase Price installment under

the Purchase Agreement, Section 2.4(a)(ii)), constituted a final determination in accordance with Section 2.4(c) of the Purchase Agreement.

50.     Under Section 2.4(c) of the Purchase Agreement, Defendant is required to pay the 2022 Installment Amount within five (5) Business Days after a final determination.

51.     The final determination in accordance with Section 2.4(c) of the Purchase Agreement occurred on February 7, 2023.

52.     Under the Purchase Agreement, Defendant was required to pay the 2022 Installment Amount on or before February 14, 2023.

53.     Defendant has failed or refused to pay the 2022 Installment Amount to Plaintiff.

**COUNT I**
**<u>BREACH OF CONTRACT</u>**
(PURCHASE AGREEMENT)

54.     The previous allegations of this Complaint are realleged as if set forth fully herein.

55.     The Purchase Agreement is a valid and enforceable contract between Plaintiff and Defendant.

56.     All conditions precedent to Defendant's performance have been met, satisfied or waived.

57.     Without limiting the foregoing, Plaintiff and Sellers (as defined in the Purchase Agreement) met each of the conditions required to secure the 2022 Installment Amount under the Purchase Agreement, Section 2.4(a)(ii)).

58.     As set forth above, Defendant has breached the Purchase Agreement by, among other things, failing or refusing to timely pay the 2022 Installment Amount to Plaintiff and the other Sellers as required by the Purchase Agreement.

59.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages in an amount exceeding $75,000 exclusive of interest and costs.  Among other monetary remedies, Plaintiff seeks recovery of the costs and expenses, including reasonable attorneys' fees he has incurred in enforcing the Purchase Agreement.

## COUNT II
## BREACH OF CONTRACT
(ESCROW AGREEMENT)

60.     The previous allegations of this Complaint are realleged as if set forth fully herein.

61.     Pursuant to the Purchase Agreement, the parties agreed to deposit certain funds in escrow and to make such deposit subject to the terms and conditions set forth in a written escrow agreement.

62.     Pursuant to the Purchase Agreement, Defendant was required to deposit the State Taxes Escrow Amount (as defined in the Purchase Agreement) into the State Taxes Escrow Account (as defined in the Purchase Agreement and Escrow Agreement).

63.     Pursuant to Section 2.5(a) of the Purchase Agreement, the State Taxes Escrow Amount was to be paid to the Sellers in accordance with Section 5.4(j) of the Purchase Agreement.

64.     Section 5.4(j) of the Purchase Agreement stated in part:

The State Taxes Escrow Account will remain in place eighteen (18) months after the Closing Date. Notwithstanding anything in this Agreement to the contrary, if at the end of the eighteen (18) months after the Closing Date there remains any amount in the State Taxes Escrow Account after distributions (if any) made from such State Taxes Escrow Account to pay unpaid State Taxes pursuant to this Section 5.4, the Parties shall within one (1) Business Day jointly instruct the Escrow Agent to distribute such remaining amount to the Sellers (in accordance with their respective pro rata portions provided in the Allocation).

65.     As required by the Purchase Agreement, Plaintiff, Defendant and JPMorgan Chase Bank, NA ("Escrow Agent") executed that certain "Escrow Agreement" effective as of December 15, 2020 (the "Escrow Agreement").

66.     The Escrow Agreement stated in pertinent part:

i.     Agent shall not pay out any portion of the State Taxes Escrow Account unless and until Escrow Agent receives either (i) a Joint Release Certificate that is signed by Authorized Representatives of both Purchaser and Representative or (ii) a State Taxes Final Determination Notice as per Section 3.b.ii below.

*  *  *

iii. Within five (5) Business Days following the Claims End Date, all of the remaining funds in the State Taxes Escrow Account shall be delivered by the Escrow Agent to Representative upon Joint Release Certificate.

67.     The "Claims End Date" was defined in the Escrow Agreement as the date that was eighteen (18) months after the date of the Escrow Agreement—i.e., June 15, 2022.

68.     As of June 15, 2022, funds remained in the State Taxes Escrow Account.

69.     On June 24, 2022, Plaintiff and Defendant agreed to temporarily delay the Escrow Agent's release of the funds in the State Taxes Escrow Account.

70.     Plaintiff, Defendant and the Escrow Agent later executed that certain "Amendment to the Escrow Agreement" pursuant to which they amended Section 3(c)(ii)

of the Escrow Agreement to modify the Claims End Date with regards to the State Taxes Escrow Account to be December 15, 2022.

71.    On December 12, 2022, Plaintiff delivered correspondence to Defendant reminding Defendant that all funds in the State Taxes Escrow Account must be released and disbursed to Plaintiff in accordance with the parties' agreements—i.e., within five (5) Business Days following the Claims End Date.

72.    More than five (5) Business Days have passed since the Claims End Date.

73.    Defendant failed or refused to direct the Escrow Agent to release all of the funds held in the State Taxes Escrow Account as of December 15, 2022 to Plaintiff.

74.    Defendant failed or refused to execute a joint instruction letter to the Escrow Agent as required by the Purchase Agreement.

75.    Defendant failed or refused to execute a joint release certificate as required by the Escrow Agreement.

76.    Defendant failed or refused to permit distribution of the funds held in the State Taxes Escrow Account as of December 15, 2022 to Plaintiff pursuant to the Escrow Agreement or to the Sellers in accordance with their respective pro rata portions provided in the Allocation (as defined in the Purchase Agreement).

77.    Defendant's conduct constitutes a breach of the Purchase Agreement and a separate breach of the Escrow Agreement.

78.    Section 9.17 of the Purchase Agreement states:

Enforcement of Agreement. Each party acknowledges and agrees that the other parties would be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that

any breach of this Agreement by any party could not be adequately compensated in all cases by monetary damages alone. Accordingly, in addition to any other right or remedy to which any party may be entitled at law or in equity, before or after the Closing each of the parties shall be entitled to enforce any provision of this Agreement by a decree of specific performance and to temporary, preliminary and permanent injunctive relief to prevent breaches or threatened breaches of any of the provisions of this Agreement, without proof of actual damages or inadequacy of legal remedy, and without posting any bond, security or other undertaking. The pursuit of specific enforcement by any party hereto will not be deemed an election of remedies or waiver of the right to pursue any other right or remedy (whether at law or in equity) to which such party may be entitled at any time.

79.     The Purchase Agreement is a valid and enforceable contract.

80.     All conditions precedent to Plaintiff's right to demand Defendant's performance under the Purchase Agreement have been met, satisfied or waived.

81.     Pursuant to the Purchase Agreement and applicable law, Plaintiff is entitled to a decree of specific performance requiring Defendant to immediately execute a joint release certificate substantially in the form of the joint release certificate attached to this pleading as Exhibit A.

82.     In addition or in the alternative to the requested decree, Plaintiff has been or will be damaged as a result of Defendant's breaches of the Purchase Agreement.

83.     The Escrow Agreement is also a valid and enforceable contract.

84.     All conditions precedent to Plaintiff's right to demand Defendant's performance under the Escrow Agreement have been met, satisfied or waived.

85.     Pursuant to the Escrow Agreement and applicable law, Plaintiff is entitled to a decree of specific performance requiring Defendant to immediately execute a joint

release certificate substantially in the form of the joint release certificate attached to this pleading as Exhibit A.

86.    In addition or in the alternative to the requested decree, Plaintiff has been or will be damaged as a result of Defendant's breaches of the Escrow Agreement.

87.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages in an amount exceeding $75,000 exclusive of interest and costs.  Among other monetary remedies, Plaintiff seeks recovery of the costs and expenses, including reasonable attorneys' fees he has incurred in enforcing the Purchase Agreement.

WHEREFORE, Plaintiff prays for relief and that the Court enter a judgment in its favor as follows:

1.    Awarding Plaintiff damages for breach of contract in an amount equal to the 2022 Installment Amount;

2.    Awarding Plaintiff damages for applicable interest, costs, and attorneys' fees pursuant to the Purchase Agreement's indemnity provisions;

3.    Entering a degree of Specific performance requiring Defendant to immediate execute the unredacted version of the Exhibit A to this pleading.

4.    Awarding Plaintiff such other and further relief as may be just and equitable.

Dated:  March 7, 2023                          WINTHROP & WEINSTINE P.A.


By: /s/ *Devon C. Holstad*
Devon C. Holstad (NY #5339221)
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
dholstad@winthrop.com


25886471v1